# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

LILLIAN EDWARDS, as Administratrix
of the Estate of MARVIN MAYS, deceased,                    **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.2:06CV86-MEF**

                                        **JURY TRIAL DEMANDED**

PACTIV CORPORATION and
LOUISIANA-PACIFIC CORPORATION,                    **DEFENDANTS**


## SECOND AMENDED COMPLAINT


### JURISDICTION

1.      Plaintiff is a citizen of the State of Alabama and Marvin Mays was

a resident of the State of Alabama during his lifetime and at the time of his

death.  Defendants are corporations both incorporated under the laws of the

State of Delaware.  PACTIV Corporation's principal place of business is in the

State of Illinois, and Louisiana-Pacific Corporation's principal place of

business is in the State of Oregon or the State of Tennessee.  The matter in

controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

2.    Venue of this action is proper in the Northern Division of the Middle District of Alabama.

## PARTIES

3.    PACTIV Corporation does business by agent in the State of Alabama and may be served through their registered agent for service of process, The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

4.    Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served by service on their registered agent for service of process, United States Corporation Company, 150 South Perry Street, Montgomery, AL 36104.

5.    The Plaintiff, Lillian Edwards, as Administratrix of the Estate of Marvin Mays, deceased, is a resident of Covington County, Alabama.

## BACKGROUND

6.    Marvin Mays suffered injuries and damages which proximately caused his death caused by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

7.    The facility is located in the town of Lockhart, Alabama, and is adjacent to the town of Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company.

8.    Marvin Mays resided in the Florala/Lockhart community for most of his life.

9.    Marvin Mays also was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

10.    PACTIV Corporation is the successor to TMA Forest Products Group which assumed ownership and began operation of the wood treatment facility on or about March 6, 1979.

11.    PACTIV engaged in the business of treating lumber and pine wood poles with creosote and pentaclorophenol.

12.    Energy for the PACTIV wood treatment operation was partly obtained by burning wood wastes and scrap bark in three wood waste boilers which were used to create steam and provide heat and energy for PACTIV's sawmill and wood treatment operation.

13.    The boilers used by Defendants were not licensed as hazardous or toxic waste incinerators.

14.    The boilers used by Defendants were not designed or intended to be used as hazardous or toxic waste incinerators.

15.    The boilers used by Defendants at the facility would not have safely disposed of any hazardous or toxic waste burned in them.

16.    The facility also operated a teepee burner which was used to burn waste or scrap wood.  Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

17.    Pursuant to 42 U.S.C. § 241(4), the Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

18.    Pursuant to 42 U.S.C. § 6921, the Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic

Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

19.    The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

20.    The Secretary of Health and Human Services, United States Environmental Protection Agency lists creosote as a probable human carcinogen.

21.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

22.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are known to cause cancer.

23.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentaclorophenol as a probable human carcinogen.

24.    Pentaclorophenol is probably carcinogenic to humans.

25.    The pentaclorophenol used by both Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

26.    Dioxin and/or dioxin/furans contaminates in pentaclorophenol used at the facility included tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins.

27.    The pentaclorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

28.    The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with polycyclic aromatic hydrocarbons (PAHs).

29.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

30.    Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

31.    The wood treatment chemicals used by both Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

32.    The Defendants also made use of cooling tower corrosion inhibitors which contained chromium (VI).

33.    The Secretary of Health and Human Services and United States Environmental Protection Agency list hexavalent chromium as a known human carcinogen.

34.    Creosote and pentaclorophenol wood treatment chemicals used by Defendants were dissolved in diesel fuel or a petroleum product.

35.    The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

36.    The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

37.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

38.    The Defendants engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

39.    Both Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

40.    Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

41.    L-P continued operating the facility with the same local management in the same manner as PACTIV.

42.    Within a year after L-P began operation of the facility they began using another wood treatment chemical which contained copper, arsenic and chromium (CCA).

43.    In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

44.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

45.    Arsenic is known to cause cancer in humans.

46.    During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

47.    During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

48.    During the term of its operation, L-P sprayed toxic waste water into the air.

49.    During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

50.    The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

51.     The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

52.     Both Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

53.     The Defendants also used sawdust to filter and contain hazardous wastes.

54.     The sawdust used by Defendants was contaminated with creosote, pentachlorophenol and associated chemicals.

55.     The sawdust used for containment by L-P was further contaminated with arsenic.

56.     The sawdust used for containment by Defendants was burned in the operation boilers.

57.     Both Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

58.     Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

59.    Both Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

60.    Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

61.    The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, creosote mixtures with carrying liquids such as diesel fuel oil, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

62.    The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids and waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and

burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

63.    The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

64.    The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

65.    Groundwater at the facility has been contaminated by toxic and hazardous wastes.

66.    Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

67.    The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

68.    The Defendants engaged in the discharge of toxic waste fluids.

69.    The Defendants caused the discharge of toxic chemical vapors, particulates and aerosols into the air.

70.    The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous waste and known or probable human carcinogens.

71.    Defendants used toxic wastes to make roadways and scattered it about the facility roadways.

72.    Toxic chemicals spread over the facility contributed to a cloud of toxic dust or vapors created by the operation.

73.    PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

74.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

75.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

76.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

77.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

78.    The Defendant PACTIV sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

79.    The Defendant L-P sold scrap wood which contained wood treatment chemicals for use as firewood in neighboring homes.

80.    Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, pentachlorophenol, creosote, benzene, PAHs and dioxin/furans have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, lung cancer, breast cancer, bone cancer, kidney cancer, liver

cancer, Scleroderma, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, femal reproductive organ disease, reproductive problems, eye disease, skin disease, respiratory disease, sinus problems, coughing, miscarriages, premature births and birth defects.

81.    At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

82.    Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

83.    In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the public.

84.    The Defendants made no effort to warn surrounding neighborhoods and the public of the nature of the disease or cancer causing emissions from their facility.

85.    The toxic chemicals emitted by Defendants were persistent when deposited in Plaintiff's home and environment so that Marvin Mays continued to be exposed to them even after the time of emission.

86.    PACTIV has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

87.    PACTIV has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

88.    L-P has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

89.    L-P has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

90.    At all times pertinent hereto, the Defendants PACTIV and L-P by through their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic,

pentachlorophenol, creosote, and their constituents which contained hazardous and toxic chemicals.

91.   The fact that Marvin Mays was present at homes in various locations in the Florala/Lockhart area caused him to be exposed to toxic and/or hazardous chemicals or known or probable carcinogens released or produced at Defendants' wood treatment facility.

92.   The Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Marvin Mays to suffer injuries and damages which proximately caused his death.

93.   Marvin Mays suffered from a disease that may be latent and not manifest itself until after a lengthy period of time afer exposure.

94.   Marvin Mays did not know and reasonably had no knowledge or way of ascertaining that him disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.

95.   Plaintiff further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations

for any time that accrued during the time defined by the parties' tolling agreement.

96.    At all times pertinent to this Complaint, Defendants created, stored and disposed of toxic and hazardous waste and chemicals which were regulated by both federal and state law.

97.    Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

98.    Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

99.    The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

100.    Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

101.    Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

102.  Defendant L-P had actual knowledge of the pending or potential litigation which would be filed against them by Plaintiff.

103.  Upon information and belief, Plaintiffs aver that with knowledge of claims that would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material evidence and documents.

104.  Plaintiffs are entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.


## COUNT ONE

## NEGLIGENCE

105.  Defendants had a duty to Plaintiff since the commencement of their operation and continuing to the date of this lawsuit.

106.  Marvin Mays was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Plaintiff lived for years.

107.  The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their

operations emitted toxic and noxious substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including the Plaintiff.

108.   At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring the Plaintiff.

109.   The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

110.   The Defendants negligent acts or omissions proximately caused Marvin Mays to suffer injuries and damages which resulted in his death.

111.   As a direct and proximate consequence of the negligent acts and omissions of the Defendants, their agents, employees and representatives, Marvin Mays suffered injuries and damages which proximately caused his death.

## COUNT TWO

## RECKLESSNESS

112.   The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of the Plaintiff and persons in surrounding neighborhoods.

113.   As a direct and proximate result of gross negligence, wilful and wanton acts of the Defendants Marvin Mays suffered injuries and damages which proximately caused his death.

114.   The Defendants' gross negligence, reckless and wanton acts and their reckless disregard for the safety of the Plaintiff and the public surrounding their facility entitles the Plaintiff to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

## COUNT THREE

## NEGLIGENCE PER SE

115.   Defendants' failure to cease emission of toxic substances into the air and their failure to cease the disposal or contamination of the ground water and soil and the Defendants' failure to properly report their violations and toxic air emissions is a violation of the laws and regulations of the State of Alabama.

116.   As a proximate consequence of the aforestated negligence per se of Defendants and their agents, employees and representatives, Marvin Mays suffered injuries and damages which proximately caused his death.

## COUNT FOUR

## INTENTIONAL TORT

117.   Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to the Plaintiff and other persons was certain or substantially certain.

118.   The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

119.  Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

120.  Marvin Mays was a foreseeable victim of Defendants' wrongful acts.

121.  As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Marvin Mays suffered injuries and damages which proximately caused his death.

122.  Plaintiff further alleges that the Defendants were aware that the volume of wood treatment and production at the Florala/Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes.  Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

123.  Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

124.   The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

## COUNT FIVE

## TRESPASS

125.   The Defendant L-P negligently, recklessly or intentionally caused or allowed hazardous toxic waste to touch and come in contact with the person and property of the Plaintiff without his knowledge or consent.

126.   As a direct and proximate consequence of the negligent, reckless, knowing or intentional act of trespass by the Defendant L-P acting by and through their employees, agents and representatives, Marvin Mays suffered injuries and damages which proximately caused his death.

127.   As a result of the Defendants' knowing and intentional act of trespass or reckless trespass and their violation of Plaintiff's right to be free from touching and contamination by Defendants' toxic and hazardous

substances the Plaintiff is entitled to recover punitive damages to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

## COUNT SIX

## CONSPIRACY

128.   As a further and alternative ground for relief the Plaintiff asserts a cause of action for conspiracy.

129.   At all times relevant, the Defendants L-P and PACTIV and others have conspired to violate the rules, regulations and laws  of the State of Alabama and the United States of America.

130.  The Defendants herein also knowingly and intentionally conspired to mislead and defraud governmental agencies and to conceal illegal and improper contamination emanating from their wood treatment facility in Lockhart, Alabama, in order to avoid any costs associated with the clean-up and remediation despite Defendants' knowledge of risk to human health.

131.  The Defendants have further conspired between themselves to conceal from and defraud State of Alabama regulatory agencies the nature and amount of their toxic emissions in order to avoid the costs required to install proper pollution control devices or to make proper disposal of their hazardous waste.

132.  In furtherance of their conspiracy or conspiracies, the Defendants committed an overt act or acts, including the acts described in this Complaint.

133.  As a proximate and direct result of the acts of the Defendants, Marvin Mays suffered injuries and damages which proximately caused his death.

134.  The Defendants' knowing and intentional act of conspiracy to violate the rules and regulations of the State of Alabama and to conceal their illegal discharge of toxic waste is such that the Plaintiff is entitled to punitive damages to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

## COUNT SEVEN

## PRODUCTS LIABILITY

135.   The Defendants engaged in the sale of firewood to residents and persons in the Florala/Lockhart community.

136.   The firewood or wood for use in home or stove fires sold by the Defendants included wood which had been treated with toxic wood treatment chemicals.

137.   The wood sold by Defendants was burned by persons in homes in the neighboring community in a foreseeable and intended use.

138.   The Defendants were engaged in the manufacture and sale and placement of wood and wood products into the stream of commerce for commercial purposes.

139.   The firewood sold by Defendants was defective and unreasonably dangerous when burned because it emitted toxic and hazardous waste products into the air.

140.   As a proximate consequence, Marvin Mays suffered injuries and damages which proximately caused his death.

## COUNT EIGHT

## FAILURE TO WARN

141.  The Defendants failed to warn the Plaintiff and members of the public of the dangerous health aspects related to their respective operation and the by-products, air emissions and other toxic emissions that were released.  Specifically, Defendants failed to provide the Plaintiff and other persons similarly situated and the public at large with warnings of dangerous emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

142.  The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

143.  The danger also included the toxic air emissions that Defendants caused.

144.  Defendants further failed to provide Plaintiff and others with knowledge as to what would be a reasonable, safe and sufficient protection,

if there were any, to protect the Plaintiff and others from harm and life threatening injuries as a result of exposure to the Plaintiff and others by the Defendants' emissions.

146.    The Defendants have negligently and recklessly failed and refused to warn and advise the Plaintiff and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered the Plaintiff and others by invading their homes, property, breathing zone, schools and the places that they occupy.

147.    Despite their knowledge that their toxic emissions have contaminated the environment where Plaintiff lived, even at the present time the Defendants have failed to warn the Plaintiff and others.

148.    Defendants' failure to warn took place before, during and after the Plaintiff was exposed to Defendants' toxic emissions.

149.    Defendants' breach of duty to warn the Plaintiff of the dangers proposed by their exposure to Defendants' toxic emissions is a substantial contributing cause to Plaintiff's injuries.

150.  As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Marvin Mays suffered injuries and damages which proximately caused his death.


WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendants for punitive damages to be determined by the trier of fact and costs.

 /s/ W. Eason Mitchell
W. EASON MITCHELL (MIT020)
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
Telephone: 662-327-0903
Facsimile: 662-329-4832
emitchell@colom.com

 /s/ Gregory A. Cade
GREGORY A. CADE (CAD010)
LEE GRESHAM, III (GRE054)
FRED R. DeLEON (DEL021)
Environmental Litigation Group
3529 Seventh Avenue South
Birmingham, AL  35222
Telephone: 205-328-9200
Facsimile: 205-328-9206

## Certificate of Service

I, W. Eason Mitchell, hereby certify that on May 18, 2006, I electronically filed the foregoing *Second Amended Complaint* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

        H. Thomas Wells, Jr., Esq.
        John A. Earnhardt, Esq.
        Dennis R. Bailey, Esq.
        R. Austin Huffaker, Esq.

                          /s/ W. Eason Mitchell_____
                          W. Eason Mitchell

47569.wpd