IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LILLIAN EDWARDS, as | ) | |
| Administratrix of the Estate of | ) | |
| MARVIN MAYS, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | 2:06-cv-86-WKW-CSC |
| PACTIV CORPORATION and | ) | |
| LOUISIANA-PACIFIC | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' TO MOTION TO COMPEL

**COMES NOW** the Plaintiff and responds to Defendants Pactiv Corporation and

Louisiana Pacific Corporation' Motion to Compel filed and served on about June 28th ,

2006 stating as follows:

The Defendants seek to obtain witness statements in possession of the Plaintiff's

counsel that include the counsel's mental thoughts and impressions. All witnesses who

provided statements are represented by Plaintiff's counsel and make similar claims.

Incorporate by reference are affidavits of Plaintiff's counsel W. Eason Mitchell (Exhibit

"A") and Gregory A. Cade (Exhibit "B") in compliance with the local rules.  More so, the

information sought violates an executed settlement agreement entered between both

parties prior to an unsuccessful mediation where this information, hereafter referred to as

the Florala Mediation CD, was used to show the extent of damage as determined by some

former employees, all of which are clients of Plaintiff's counsel. Now, the Defendants assert that they will experience undue hardship, even before an instituted scheduling · order by this Court, if they are denied access to the Florala Mediation CD. This information in the hands of defense counsel would serve only as a harassment tool in witness depositions scheduled to begin the week of July 11th, 2006.

This court should not be swayed by a disguised attempt to classify this information as discoverable. The Florala Mediation CD and the information contained therein, is work product. Generally, a party seeking protected work product must overcome a high hurdle in order to gain such protected information. Fed. Rules Civ. Procedure 26 (b) (3). An attorney is afforded a shelter wherein he may analyze and prepare his client's case and protect his mental impressions of the same. *U.S. v Nobles*, 422 U.S. 225 (1975). The work product doctrine is broader than the attorney-client privilege. Id. The US Supreme Court has addressed the type of discovery that the Defendants attempt to force as early as 1947. In *Hickman v. Taylor*, 329 U.S. 495 (1947), Justice Murphy, writing for the majority noted that:

> Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

In more recent years, Courts have improved upon the protection of witness statements gathered by attorneys in anticipation of litigation. The work product doctrine

has been designed to promote the adversary system by protecting an attorney's trial preparation. Rule 26 (b) (3) place a two-fold burden on the party seeking the production of work product of an adversary:

(1) a showing of undue hardship and (2) a substantial need. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464 (11th Cir. 1984). The Defendants have failed to show either of these prongs. Further, the Defendants have not let the natural course of discovery run prior to making this demand for production by the Plaintiff. See *In re: International Systems and Controls Corp*, 693 F.2d 1235 (5th Cir. 1982). ("[D]iscovery of work product will be denied if a party can obtain the information he seeks through deposition.").

The Defendants argue that seeking such information stems from the concept of undue hardship where the witnesses may suffer from an inability to recall because of faulty memory or where the witness may be hostile or reluctant to provide accurate prior statements. Plaintiff's counsel demonstrated to the Court that the sometime lengthy normal course of discovery might cause some key witnesses to be unavailable if some form of expedited discovery was not conducted. The interest to do such was not intended to open Pandora's box and give opposing counsel the right to seize upon an opportunity to harass apart from the purpose of this Court's order to preserve certain key witness testimony. Furthermore, the need to "quickly prepare" for depositions after more than one year of document sharing and pleading filings, including affidavits that are the more accurate of the statements made against each Defendant, is simply an undermining of this Court by seeking such information under such pretenses offered to this Court. The Defendants have not and cannot present any reason to this Court that can clearly identify

3

an undue hardship causing a prejudice that cannot be obtained by properly deposing each deponent where the gravity of such information is determined anyway.

The Defendants misconstrue the latitude afforded to a party under Federal Rule of Civil Procedure 26 (b)(1). Plaintiff concede Rule 26(b)(1) does allow for the *discovery* of the statements in question. Plaintiff has not denied such statements exist and indeed has supplied the names of those making the statements in question. What Rule 26(b)(1) does not allow for is the *production* of the statements. Under Rule 26(b)(1), at the very least, Defendants are entitled to what is found in the remaining portion of the Rule which is the "…identity and location of person having knowledge of any discoverable material." Fed.R.Cv.P. 26(b)(1). Plaintiff has satisfied the requirements of this Rule by setting forth the names of the potential witnesses offering such statements. Rule 26(b) (1) makes no requirement of a party to turn over the actual statement of potential witnesses; merely the identity and location of such witnesses is sufficient.

Further, while Defendants have reached outside of this jurisdiction in an attempt to find law to support their theory in this motion, an ample body of case law on the subject exist in our own 11th Circuit. As recently as the year 2000, the Court affirmed the standard to use in both criminal and civil (emphasis added) proceedings when the question of work product arose. *Williams v. Taylor*, 221 F.3d 1177 (11th Cir. 2000). In *Williams,* the court opined that compelling reasons exist against a rule requiring work product be turned over to the opposing side. *Williams* at 1182. The 11th Circuit made it clear in *Cox v Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994), that work product such as that Defendants seek, here bears a protection of absolute

immunity.  The 11th Circuit, borrowing language from its sister 8th Circuit in *Cox,* simply but absolutely stated that work product is sacred.

Almost as an afterthought, Defendants cite *S.R.R. Co. v. Lanham* in support of their claim that the statement in question should be turned over by Plaintiff's counsel. *Lanham*, is a weak leg for which the Defendants base their argument.  The facts in *Lanham* bear little resemblance to the instant case.  In *Lanham*, facts show that the counsel for the Plaintiff sought production of material and filed an affidavit with the court detailing its client's financial inability to obtain the material in question and the fact that the statements were made by employees of the defendant in all likelihood with apprehension.  Given the marked difference in the facts in *Lanham* compared to the instant case, it is plain to see that *Lanham* is not applicable as a guide for the Court in deciding the merits of this case because the availability of the witness and their wiliness to offer testimony via deposition is controlling.  In addition, the parties have agreed and already scheduled discovery depositions with ample time prior to the preservation depositions ever taking place.  Interestingly enough however, the Lanham court did believe much like the 11th Circuit in that "...Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule." *Lanham* at 126, quoting *Schalagenhauf v. Holder* 379 U.S. 104, 1881 (1964).

Defendants will have ample opportunity to examine the words of specific witnesses without such intrusive actions sanctioned by the Court compelling the Florala Mediation CD or the information contained within.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff pray this Honorable

Court will deny Defendants' motion to compel privileged information constituting work

product in the above styled action.

**RESPECTFULLY SUBMITTED** on this the 7th day of July 2006.


_____/s/ Gregory A. Cade_____
Gregory A. Cade
Environmental Litigation Group, PC
Post Office Box 550219
Birmingham, Alabama 35255
Phone:  205-328-9200
Fax:      205-328-9456


# CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2006, I electronically filed the foregoing Plaintiff's
Response to Motion to Compel with the Clerk of the Court using the ECF system and
sent notification of such filing to the following:

H. Thomas Wells, Jr.
John A. Earnhardt
Dennis R. Bailey
R. Austin Huffaker
Edwin Bryant Nichols
Erin O'Kane Scott
John C. Berghoff, Jr.
Matthew C. Sostrin
Mark R. Ter Molen


_____/s/ Gregory A. Cade_____
Gregory A. Cade

6

# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


MELANIE CHAMBERS, Who Sues
By and Through Her Mother and Next
of Friend Gail Tatum,                                          PLAINTIFF

VERSUS                              CIVIL ACTION NO. 2:06CV83-WKW

PACTIV CORPORATION and
LOUISIANA-PACIFIC CORPORATION,                    DEFENDANTS


AFFIDAVIT

STATE OF MISSISSIPPI
COUNTY OF LOWNDES


My name is W. Eason Mitchell and I am an attorney licensed to practice

law in the State of Alabama.  I am providing this affidavit in support of an

opposition to a motion to compel discovery of statements which motion was

made by defendants in the above styled case and companion cases.  This

affidavit is intended to comply with the guideline to Civil Discovery Practice

in the Middle District of Alabama under the M.D. Ala. LR. Guideline 1,

Section I.


Page 1 of 5

I have represented the plaintiffs or their decedents since October, 2004. I also represent approximately 800 or more claimants who make claims similar to the plaintiffs for different and/or varying amounts of damages. Approximately 200 of these clients have indicated an intention to file suit in this Court in the near future in the event their claims are not addressed by other means.

It is my custom to video record statements of many of my clients for my own use in litigation case evaluation and for use in mediations and/or settlement discussions. I also video record witnesses for the same reasons, as well as a substitute for written statements in the event of subsequent surprise testimony from the witness during trial.

I personally recorded scores of client and witness interviews between October, 2004, and December, 2005, which were relevant to expected damage and liability issues in this case. I also employed my daughter, Alli Mitchell, to record and interview clients on damage issues only for the purpose of presentation at a mediation that took place prior to the filing of this case. Recordings were selected, edited for time restraints and electronically stored on a laptop computer. Those statements, in the exact

format used at mediation in December, 2005, have been transferred to a CD which I refer to as the Florala Mediation CD.

The Florala Mediation CD begins with a written notice that it is considered privileged both for work product and attorney client purposes and presented only under an agreement that these privileges were not waived. A copy of the statement, taken directly from the program, which must be viewed before any statements appear, is attached hereto as Exhibit "A." I have never allowed defendants to see or hear the Florala Mediation CD without first obtaining an oral agreement that it would not constitute a waiver of any privilege. The parties have also entered into a written agreement to engage in the settlement discussions that included the material on the Florala Mediation CD, which agreement is attached as Exhibit "B." Four of the witnesses on the Florala Mediation CD are Buck Roberts, Roy Ezell, Carlton Dukes and Jacky Partridge. These are the same four individuals who have supplied affidavits which were exhibits to the plaintiff's opposition to the defendants' motion to dismiss or for a more definite statement filed in this Court.

The subject of these persons' statements on the CD is the same as the subject of their affidavits. The CD does not indicate that copies were made and it has been consistently treated as confidential privileged work product within our office. No one, except for production staff, office staff, attorneys who represent Plaintiffs or Defendants who agreed to confidentiality have been allowed to view the material.

_W. Eason Mitchell_
W. Eason Mitchell

Sworn to and subscribed before me this 29th day of June, 2006.

_Karen N. Winter_
Notary Public

My Commission Expires:

9-25-2009



Page 4 of 5

## CERTIFICATE OF SERVICE

I, W. Eason Mitchell, hereby certify that on July 6, 2006, I electronically filed the foregoing *Affidavit* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Douglas Sheppard Arnold, Esq.
Dennis R. Bailey, Esq.
John C. Berghoff, Jr., Esq.
John A. Earnhardt, Esq.
R. Austin Huffaker, Jr., Esq.
Orlyn O. Lockard, III, Esq.
Edwin Bryan Nichols, Esq.
Laura Ellison Proctor, Esq.
Erin O'Kane Scott, Esq.
Matthew C. Sostrin, Esq.
Mark R. Ter Molen, Esq.
H. Thomas Wells, Jr., Esq.
Bernard Taylor, Sr., Esq.

This 6th day of July, 2006.

/s/ W. Eason Mitchell
W. Eason Mitchell

Page 5 of  5

Warning

1. This presentation is copyrighted with all rights reserved by The Colom Law Firm, LLC.

2. Presentation of this material is made in accordance with confidentiality agreements. All material in this presentation is confidential.

3. This material is provided in the context of settlement negotiations and for that purpose only. This presentation shall not constitute any waiver of attorney-client privilege. All material contained in this presentation is the work product of The Colom Law Firm, LLC, and is presented without waiver of any rights.

EXHIBIT

A

DEC-15-04    18:52    FROM-COLOM LAW FIRM    +    T-875  P.003/056  F-380

## TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is made and entered into by and between Louisiana-Pacific Corporation, a Delaware corporation ("LP") and the clients of the Colom Law Firm listed in Exhibit A, which is attached hereto and incorporated herein (the "Clients"). Hereinafter, LP and the Clients are individually referred to as "Party" or collectively referred to as "Parties."

WHEREAS, the Clients allege that they have been injured or damaged due to exposure to creosote, pentachlorophenol, or chromated copper arsenic (the "Chemicals") allegedly released into the soil, water, and air from LP's Lockhart, Alabama facility (the "Facility") and that LP has liability for such releases;

WHEREAS, LP denies that it has any liability with respect to the foregoing allegations;

WHEREAS, the Parties have expressed an interest in entering into a standstill and tolling agreement governing the claims that the Parties potentially could assert against each other relating to the alleged release of the Chemicals from the Facility for the purpose of resolving such claims without litigation; and

NOW, THEREFORE, in consideration of the covenants herein and the mutual benefits to be derived therefrom, LP and the Clients hereby agree as follows:

1.    The Clients and LP agree that all statutes of limitations applicable as of the Effective Date to any rights, claims, causes of action, counterclaims, crossclaims, and defenses relating to the alleged release of the Chemicals from the Facility which either the Clients could assert against LP or LP could assert against the Clients as of the Effective Date shall be tolled for the period between the Effective Date and the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from all computations of any applicable statutes of limitations. If any lawsuit is commenced against LP relating to the alleged release of the Chemicals from the Facility during the Tolling Period by any of the Clients or persons who were formerly Clients, then this paragraph shall be void in its inception as to such Clients or former Clients, as if this Agreement had never been executed, unless the Parties otherwise agree in writing.

2    The persons executing this Agreement on behalf of the Clients have full authority to agree and do agree that no action will be commenced against the LP by any of the Clients during the Tolling Period.

EXHIBIT

B

DEC-15-04   18:53   FROM-COLOM LAW FIRM                    +              T-875  P.004/056  F-380

3.      The persons executing this Agreement on behalf of the LP have full authority to agree and do agree that no action will be commenced by or on behalf of LP against any of the Clients during the Tolling Period.

4.      The Tolling Period established by this agreement shall end and any lawsuits, claims or civil actions may be commenced by either Party upon the earlier of 12 months from the Effective Date or upon 30 days written notice (the "Termination Date").

5.      Any notice or other communications made pursuant to this Agreement shall be in writing and hand-delivered, sent by registered or certified mail, via facsimile, or via Federal Express and shall be deemed given or made upon receipt, to the respective Party at the following addresses, or at such other address as shall be specified in a notice given in accordance with this paragraph:

   If to Clients:

   Wilbur O. Colom
   200 Sixth Street North Suite 102
   Columbus, MS 39703-0866
   Telephone: (662) 327-0903
   Fax: (662) 329-4832

   If to LP:

   Edwin A. Carlson, Esq.
   Louisiana-Pacific Corporation
   805 SW Broadway, Suite 900
   Portland, OR 97205
   Telephone: (503) 821-5320
   Fax: (503) 821 5105

Time computed under this Agreement shall be in accordance with the Alabama Rules of Civil Procedure or by the Federal Rules of Civil Procedure taking into account Alabama state holidays.

6.      Nothing in this Agreement shall constitute an admission of any fact or the assumption of any liability by LP of any kind or that any person, including the Clients, has a valid claim or is otherwise entitled to bring an action against LP. Moreover, this Agreement or any subsequent discussions during the Tolling Period may not be offered as evidence of an admission of such responsibility or liability in any court or legal proceeding. LP does not waive any defense to any claim that may be asserted against it, except for the

DEC-15-04  18:53    FRKM-COLOM LAW FIRM                    +                    T-875  P.005/056  F-380

express prospective tolling of further running of applicable statutes of limitations during the Tolling Period. Nothing in this Agreement shall constitute a waiver by LP of the right to assert, plead, or otherwise raise any defense based on the running of any applicable statutes of limitations, laches, or any similar defense that may bar a claim based on the passage of time, except that any time accrued during the Tolling Period shall not be used for the purpose of computing expired periods of time.

7.  Nothing in this Agreement shall imply or create an obligation on the part of any Party to settle any claim or to engage in good faith settlement negotiations of any claim. However, the Parties agree to meet as reasonably necessary in order to discuss the possibility of settlement after initial evaluations are complete. Unless expressly rejected in writing by either party, the permissible fees and expenses of any mediator shall be equally divided between LP and the Clients. This Agreement shall not be construed to require mediation, only that mediation may take place absent objection by either Party. Any mediator shall be selected by mutual agreement of the Parties. If the Parties do not agree upon a mediator, the mediator shall be selected by LP. If the Parties do not agree upon a mediator and LP fails to select a mediator within 28 days of any settlement discussion meeting, the Clients shall select a mediator. Any Party who cancels mediation after a mediator has been selected shall be responsible for the mediation cancellation charges.

8.  The Clients and the Colom Law Firm agree that they shall not directly or indirectly mention LP in any advertising, notice, press release or similar communications during the Tolling Period.

9.  The Parties both agree that all Parties participated in the drafting of this Agreement, and therefore, should any provision of this agreement be determined to be ambiguous, such ambiguity shall not be construed for or against either Party.

10. This Agreement shall not revive any rights, claims, causes of action, counterclaims, crossclaims or defenses that are already barred by any applicable provision of law as of the Effective Date.

11. This Agreement may be signed in counterparts by the Parties, and those counterparts, when taken together, shall have the same force and effect as if a single, original document had been signed by both Parties.

12. Any modification or extension to this Agreement must be in writing and signed by the Parties.

DEC-15-04   18:54    FROM-COLOM LAW FIRM                    +                    T-875   P.006/056   F-380

13. The undersigned representative of each Party certifies that her or she is fully authorized to enter into the terms and conditions of this Agreement and to legally bind such Party to this Agreement.

14. The Parties have signed this Agreement on the date shown below their respective signatures. This Agreement, for all purposes, shall be deemed to be fully executed and effective on the latest of the dates of execution shown below (the "Effective Date").

FOR THE CLIENTS

By: _____

W. Eason Mitchell
The Colom Law Firm

Date: Dec. 10, 2004

Also approved:

By: _____

Wilbur O. Colom
The Colom Law Firm

Date: 12-10-04

FOR LOUISIANA-PACIFIC CORPORATION

By: _____

Its Representative

Date: December 16, 2004

# Exhibit "B"

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LILLIAN EDWARDS, as | ) | |
| Administratrix of the Estate of | ) | |
| MARVIN MAYS, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | 2:06-cv-86-WKW-CSC |
| PACTIV CORPORATION and | ) | |
| LOUISIANA-PACIFIC | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF GREGORY A. CADE

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| JEFFERSON COUNTY | ) |

My name is Gregory A. Cade and I am an attorney licensed to practice law in the State of Alabama. I am providing this affidavit in support of an opposition to a motion to compel discovery of statements which motion was made by Defendants in the above styled case. This affidavit is intended to comply with the guideline to Civil Discovery Practice in the Middle District of Alabama under the M.D. Ala. LR Guideline 1, Section 1.

Eason Mitchell and I represent approximately 800 or more claimants who make similar claims for different and/or varying amounts of damages resulting from chemical exposure released from Defendant's facility located in Lockhart, Alabama. Approximately 200 of these clients have indicated an intention to file suit in this Court in

the near future in the event their claims are not addressed by other means. There are approximately 300 other potential claimant files my office is reviewing in order to determine if a claim exist based on their reported health condition and it's association to dioxin's and other identifiable released chemicals from Defendant's facility.

There exist a dispute over videos recorded for use in mediations and/or settlement discussions. A detail description of the statements are addressed more clearly in the affidavit supplied to this Court by Mr. Mitchell, since he performed the actual recording of such statements. The Defendants in the above-styled matter have asserted that such information is now discoverable. Eason Mitchell and I have asserted that this information is not discoverable because it is work-product therefore the information sought is privileged. Plaintiff's Response to Defendant's Motion to Compel identifies such reasons in detail why such information is privileged. Defendants assert that they will suffer undue hardship if such recorded statements are not used or reviewed prior to the depositions of each deponent scheduled to be deposed the week of July 11th, 2006.

Mr. Mitchell and I represent all deponents, including but not limited to, Dorothy DeVaughn, Sherri Davis, Deborah Reynolds, Sandra Cobb, Kandy Creech, Roy Ezell, John "Buck" Roberts, Jacky Partridge, and Carlton Dukes.

_____
Gregory A. Cade

**SWORN TO** and **SUBSCRIBED** before me this _7_ day of July 2006.

_____
Notary Public
My Commission Expires: _8/26/07_